Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
Caleb L. Green, Esq.
Nevada Bar No. 15234
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Pkwy., Suite 1000
Las Vegas, NV 89169
Tel. (702) 257-1483
Email: jwf@h2law.com
Email: clg@h2law.com

Michael L. Sturm, Esq.
Will comply with LR IA 11-2 within 14 days
Maisa Jean Frank, Esq.
Will comply with LR IA 11-2 within 14 days
LATHROP GPM LLP
The Watergate – Suite 700
600 New Hampshire Avenue NW
Washington, DC  20037
Telephone: (202) 295-2200
Email: michael.sturm@lathropgpm.com
Email: maisa.frank@lathropgpm.com

*Attorneys for Plaintiff*
*Mister Sparky Franchising SPE LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| MISTER SPARKY FRANCHISING SPE LLC, | |
| Plaintiff, | Case No. 2:26-cv-1640 |
| v. | **COMPLAINT** |
| T AND N CONSTRUCTION LLC, DANIEL E. FERGUSON, FERGUSON HOME SERVICES LLC d/b/a FERGUSON PLUMBING AND ELECTRICAL GROUP, and JOSHUA FERGUSON, | |
| Defendants. | |

Plaintiff Mister Sparky Franchising SPE LLC ("Mister Sparky" or "Franchisor"), for its

Complaint against Defendants T and N Construction LLC, Daniel E. Ferguson, Ferguson Home

1

Services LLC d/b/a Ferguson Plumbing and Electrical Group, and Joshua Ferguson (collectively, "Defendants"), states and alleges as follows:

**<u>INTRODUCTION</u>**

1. Mister Sparky brings this action to enforce the post-termination covenants in its Franchise Agreements with T and N Construction LLC and Daniel Ferguson, including non-compete provisions that remain in full force and effect following termination of the Agreements for cause. Defendant Daniel Ferguson executed a 2020 Franchise Agreement as a franchisee and personally guaranteed the obligations arising under a 2022 Franchise Agreement between Defendant T and N Construction LLC and Mister Sparky. Defendants T and N Construction LLC and Daniel Ferguson are referred to as "Franchisees." Upon information and belief, Daniel Ferguson, together with his son, Defendant Joshua Ferguson, is using Defendant Ferguson Home Services LLC to operate a business that competes with Mister Sparky® franchisees, including within the geographic area previously served by Franchisees' former franchised business.

2. In willful disregard of Franchisees' contractual obligations, Defendants have continued operating the former Mister Sparky® franchised business under the name "Ferguson Plumbing and Electrical Group," rather than ceasing operations as required by the Franchise Agreements. The rebranded business offers substantially identical services, targets the same customer base, and continues to trade on the Mister Sparky® name and the goodwill generated using the Mister Sparky® marks and franchise system. Defendants have also wrongfully retained and used Mister Sparky's customer data following termination, depriving Mister Sparky of access to its own customer information and further undermining the integrity and operation of Mister Sparky's franchise system. Defendants' unlawful competition interferes with Mister Sparky's ability to develop and transition the territory to a replacement franchisee. The competing business is operating in direct violation of the Franchise Agreements.

3. Defendants' conduct is causing ongoing and irreparable harm to Mister Sparky's franchise system, contractual rights, and goodwill. Defendants' unauthorized use of the Mister Sparky® trade name and trademarks in connection with the competing business violates the Lanham Act and is likely to cause confusion, mistake, and deception among consumers regarding

2

Defendants' affiliation with the Mister Sparky® franchise system. This unlawful competition undermines Mister Sparky's brand integrity, unfairly diverts customers, and threatens the uniformity, trust, and compliance essential to the franchise system. Accordingly, Mister Sparky seeks damages, attorneys' fees, and preliminary and permanent injunctive relief to prevent further erosion of its rights and irreparable harm.

## PARTIES

**A.     Plaintiff**

4.      Mister Sparky is a Delaware limited liability company with its principal place of business in Columbia, Maryland. Mister Sparky licenses independent businesspersons the right to operate businesses that offer residential electrical services using the Mister Sparky® marks throughout the United States. For that purpose, Mister Sparky has developed and owns a distinctive business format and system and related standards, specifications, and procedures for providing residential electrical maintenance, repair, and replacement services.

**B.     Defendants**

5.      Defendant T and N Construction LLC is a Nevada limited liability company with its principal place of business in the state of Nevada. Upon information and belief, the sole member of T and N Construction LLC is Daniel E. Ferguson. T and N Construction LLC was a Mister Sparky® franchisee that operated a Mister Sparky® business in a territory covering Las Vegas, Nevada, and surrounding areas.

6.      Defendant Daniel E. Ferguson is a natural person and a resident of Nevada. He entered into the 2020 Franchise Agreement with Mister Sparky as an individual franchisee. He is also the owner of T and N Construction LLC and personally guaranteed its obligations under its 2022 Franchise Agreement with Mister Sparky.

7.      Defendant Ferguson Home Services LLC is a Nevada limited liability company with its principal place of business in the state of Nevada. Upon information and belief, the members of Ferguson Home Services LLC are Selina and Joshua Ferguson, who are both residents of Nevada.

8.      Defendant Joshua Ferguson is a natural person and a resident of Nevada. Upon

3

information and belief, Joshua Ferguson is the son of Daniel E. Ferguson, and along with his wife, Selina Ferguson, owns and operates the competing business run by Ferguson Home Services LLC, d/b/a Ferguson Plumbing and Electrical Group.

**JURISDICTION AND VENUE**

9. This action involves trademark infringement under the Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1051, et seq.

10. This Court has subject matter jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a), 1121, and 28 U.S.C. §§ 1331 and 1338. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Mister Sparky and Defendants and the amount in controversy exceeds $75,000, exclusive of interests and costs.

11. This Court has supplemental jurisdiction over Mister Sparky's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims in this action that they form part of the same case or controversy.

12. For purposes of diversity jurisdiction, Mister Sparky is a citizen of Delaware and Maryland. Mister Sparky has one member, AB Assetco LLC, a Delaware limited liability company. AB Assetco's sole member is AB Issuer LLC, a Delaware limited liability company whose sole member is AB SPE Guarantor LLC, a limited liability company, whose sole member is Authority Brands, Inc., a Delaware corporation with its principal place of business in Columbia, Maryland. All of the Defendants are citizens of Nevada.

13. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims herein occurred in this District.

14. This Court has personal jurisdiction over Defendants because each is domiciled in Nevada, organized under the laws of Nevada, and/or maintains its principal place of business in Nevada. Further, Defendants have engaged in substantial and continuous business activities in Nevada, and the acts and omissions giving rise to this lawsuit occurred, in whole or in part, in Nevada. Pursuant to Section 23.6 of the Franchise Agreements, Franchisees consented to jurisdiction and venue in this judicial district.

4927-3410-3472, v. 1

HOWARD & HOWARD ATTORNEYS PLLC

## **FACTUAL ALLEGATIONS**

**A.      The Mister Sparky® Trademarks and Franchise System**

15.      Mister Sparky is the franchisor of Mister Sparky® businesses and the owner and developer of the Mister Sparky® franchise system that offers residential electrical services, including maintenance, repair, and replacement services (the "System"). Mister Sparky has developed the System as a proprietary and standardized method of operation for franchised businesses operating under the Mister Sparky® Marks, encompassing operational and customer service standards, marketing and promotional programs, equipment and technology specifications, and other proprietary methods and know-how.

16.      Mister Sparky, through assignment, owns the Mister Sparky® name and related trademarks, trade names, service marks, and other commercial symbols (the "Marks"), as well as the goodwill and trademark registrations associated with those Marks. Those registrations, among others, include U.S. Trademark Registration Nos. 5792073, 2334568, 3534718, 3518891, and 3328568. Each of these registrations is in full force and effect.

17.      Mister Sparky® franchisees enjoy a license from Mister Sparky that allows them to use the Mister Sparky® Marks and System in connection with the operation of their Mister Sparky® Franchised Businesses.

18.      Over 200 Mister Sparky® franchised businesses exist and operate throughout the United States.

19.      Since their introduction in 1995, the Marks have been used continuously by Mister Sparky and its predecessors and affiliates.

20.      The validity of the Mister Sparky® Marks, their registrations, and Mister Sparky's exclusive right to use them in commerce are deemed incontestable under 15 U.S.C. §§ 1065 and 1115(b), as those Marks have been in continuous use in commerce for more than five (5) years and the required affidavit has been filed with the United States Patent and Trademark Office.

21.      Mister Sparky has expended a great amount of money, time, and effort in creating, maintaining, improving, advertising, and promoting the Mister Sparky® Marks and System throughout the United States. By virtue of such efforts, the Mister Sparky® Marks have become

4927-3410-3472, v. 1

HOWARD & HOWARD ATTORNEYS PLLC

associated in the minds of consumers, and in the mind of the general public, with Mister Sparky and Mister Sparky alone, and valuable goodwill has been built up in the Mister Sparky® Marks.

**B.      The Franchise Agreements**

22.      On December 20, 2020, Daniel Ferguson, individually, executed a Franchise Agreement with Mister Sparky for the franchise territory known as MS0234, which covered Henderson, Nevada, and surrounding areas (the "2020 Franchise Agreement"). A true and correct copy of the 2020 Franchise Agreement is attached hereto as **Exhibit A**.

23.      On January 13, 2022, T and N Construction LLC, an entity owned and controlled by Daniel Ferguson, executed a second Franchise Agreement with Mister Sparky for the franchise territory known as MS0260 which covered portions of Las Vegas, Nevada (the "2022 Franchise Agreement"). Daniel Ferguson personally guaranteed "all of Franchisee's obligations under the [2022 Franchise] Agreement and under other agreements" with Mister Sparky. (Ex. B at p. 43.) A true and correct copy of the 2022 Franchise Agreement, which includes Daniel Ferguson's Personal Guarantee, is attached hereto as **Exhibit B**.

24.      The 2020 Franchise Agreement and the 2022 Franchise Agreement (together, the "Franchise Agreements") governed the franchise relationship between Mister Sparky and Franchisees, for the territories identified in each respective agreement. In addition, Section 22.13 of the 2022 Franchise Agreement provided that it amended the 2020 Franchise Agreement, except with respect to certain enumerated provisions, including fees, territory description, Approved Location, contract term, renewal conditions, and transfer conditions. (*See* Ex. B at p. 38.)

25.      Together, the Franchise Agreements granted Franchisees the right to operate the franchises for ten-year terms commencing on the respective Agreement Date, solely in accordance with the Mister Sparky® System and licensed Marks, from an Approved Location (the "Franchised Business"). In exchange, the Franchise Agreements required Franchisees to continuously exert their best efforts to promote and enhance the operation of the Franchised Business and the goodwill associated with the licensed Marks.

26.      Under the Franchise Agreements, Franchisees also agreed to operate the Franchised Business in accordance with the Mister Sparky® System, including all of the rights,

HOWARD & HOWARD ATTORNEYS PLLC

HOWARD & HOWARD ATTORNEYS PLLC

standards, duties, and obligations set forth in the Franchise Agreements, as supplemented by the Brand Standards Manuals. (Franchise Agreements, Ex. B at pp. 3–7, 9–13, §§ 1–2, 6; *see also id.* at p. 31, § 16.3.)

27. Among those obligations, Franchisees agreed to operate the Franchised Business in strict accordance with the Mister Sparky® System and "use the Approved Location only for the operation of the Franchised Business." (*Id.* at pp. 9, 11, §§ 6.1, 6.13.) The Brand Standards Manual further required Franchisees to maintain a professional office and facility for franchise operations, to include designated spaces for dispatching, a reception area, technician training and break space, restroom facilities, and warehouse space necessary to support franchise operations.

28. The Franchise Agreements further required Franchisees to use, adopt, and maintain Mister Sparky's designated technology systems and software, including any required point-of-sale, scheduling, dispatch, customer management, accounting, and reporting software, as prescribed by Mister Sparky as part of the Mister Sparky® System. Franchisees agreed that use of such designated software was mandatory and that failure to timely implement or properly use the required systems constituted a breach of the Franchise Agreements. (*Id.* at pp. 10–11, §§ 6.7, 6.10.)

29. Franchisees expressly acknowledged that, in connection with the grant of the franchise, they would be provided access to Mister Sparky's Confidential Information (as that term is defined in the Franchise Agreements), including proprietary methods of operation, business systems, manuals, standards, customer and vendor information, pricing and marketing information, training materials, and other non-public business information comprising part of the Mister Sparky® System. (*Id.* at pp. 3–4, 23–24, §§ 1.8, 13.)

30. Such Confidential Information also includes "Customer Data," which the Franchise Agreements define broadly to include all information relating to any person or entity the Franchised Businesses have serviced, wherever stored, including names, addresses, telephone numbers, email addresses, service histories, pricing and payment information, and any other customer-related data. (*Id.* at p. 17, § 8.7.) Franchisees agreed that Franchisor owns and has the right to access all Customer Data, in whatever form existing, and wherever stored. (*Id.* § 8.7.2.)

31. Franchisees agreed to maintain the confidentiality of such information, to use it only as authorized under the Franchise Agreements, and to restrict access to employees and agents with a legitimate need to know who were subject to confidentiality obligations. (*See id.* at pp. 23–24, § 13.)

32. Franchisees further agreed that Mister Sparky had the contractual right to send a notice of default and terminate the Franchise Agreements upon Franchisees' failure to comply with its obligations under the Agreements. (*Id.* at pp. 29–32, § 16.)

33. Franchisees specifically agreed that Mister Sparky could terminate the Franchise Agreements without an opportunity to cure, effective immediately upon written notice, if Franchisees failed to maintain an Approved Location within three months after execution of the Agreement. (*Id.* at p. 29, § 16.1.1.)

34. Franchisees agreed that Mister Sparky could terminate the Franchise Agreements for any material failure to comply with the Franchise Agreements or Brand Standards Manual. (*Id.* at p. 31, § 16.3.)

35. Franchisees further agreed that Mister Sparky could terminate the Franchise Agreements by providing written notice of default stating the nature of the breach at least thirty days before the effective date of termination, and that if such default was not cured within that period, the Agreements would terminate without further notice. (*Id.*)

36. Upon termination, the Franchise Agreements impose post-termination obligations on Franchisees, including that Franchisees would have no further right to use the Mister Sparky® Confidential Information or Marks in any manner. (*Id.* at pp. 33–34, § 17.2.)

37. Franchisees agreed that, upon termination, Franchisees would promptly deliver to Franchisor all Customer Data in their possession or control, without retaining any Customer Data in any media. (*Id.* at p. 17, § 8.7.2.)

38. Franchisees also agreed to post-termination covenants against competition, providing that for a period of two years following termination of the Franchise Agreements, regardless of cause, or entry of a court order enforcing the covenant, Franchisees would not own, maintain, operate, engage in, invest in, be employed by, provide assistance to, or have any interest

8

HOWARD & HOWARD ATTORNEYS PLLC

in any "Competing Business" that is located in or serves customers within (i) the Territory, (ii) forty miles of the Territory, (iii) any zip code where Franchisee's Franchised Business served customers during the term, (iv) the territory of any other then-existing Franchised Businesses plus the area formed by extending the boundaries of that territory ten miles in all directions, or (v) the territory served by any business operated by Franchisor, its affiliates or their licensees under the marks at such time plus the area formed by extending the boundaries of that territory ten miles in all directions. (*Id.* at p. 24, § 14.2.1.)

39. The Franchise Agreements' Brand Appendix defines "Competing Business" as any business that (i) offers electrical products or services or other products or services similar to those offered by the Franchised Businesses, or (ii) grants franchises or licenses to others to operate such businesses, or (iii) is the same or substantially similar in nature or purpose to the Franchised Businesses (other than a "Mister Sparky" business operated under a franchise agreement). (*Id.* at p. 50.)

40. Franchisees further agreed not to appropriate or duplicate any portion of the Mister Sparky® System for any purpose other than operating a franchised business, not to divert customers or prospective customers to any Competing Business, and not to engage in conduct harmful to the goodwill associated with the Marks and System. (*Id.* at pp. 24–25, § 14.2.2.)

41. Franchisees agreed that, in the event of early termination based on its default, they would pay liquidated damages in the amount of $100,000 per Agreement to compensate for Mister Sparky's lost Royalty Fees. (*Id.* at p. 32, § 16.8.)

42. Franchisees acknowledged that Mister Sparky would suffer irreparable harm from violations of the post-termination obligations in the Franchise Agreements and Franchisees expressly consented to the issuance of injunctive relief without the posting of a bond. (*Id.* at p. 40, § 23.3.) Franchisees further agreed that the existence of any claims they may have against Mister Sparky would not constitute a defense to enforcement of the restrictive covenants and post-termination obligations. (*Id.*)

43. Franchisees also agreed to reimburse Mister Sparky, upon demand, for the costs and expenses incurred by Mister Sparky, including attorneys' fees, as a result of Franchisees'

9

HOWARD & HOWARD ATTORNEYS PLLC

breach and Mister Sparky's enforcement of the terms of the Franchise Agreements. (*Id.* at p. 41, § 23.10.)

44. In addition, Daniel Ferguson individually executed a Personal Guarantee in which he agreed to be bound by the confidentiality and non-competition obligations contained in the Franchise Agreements and agreed not to use or disclose any proprietary or Confidential Information obtained through his involvement with the Franchised Business. (*Id.* at p. 43, § 3.)

45. Daniel Ferguson also executed a separate confidentiality and non-competition agreement, in which he acknowledged that he would gain access to Confidential Information and agreed not to use or disclose such information outside the scope of the franchise relationship. (*Id.* at p. 65.)

46. Daniel Ferguson further agreed to be personally bound by the non-competition restrictions set forth in Section 14.2.1 of the Franchise Agreement and acknowledged that enforcement of those restrictions would not deprive him of the ability to earn a living. He further agreed to reimburse Mister Sparky for costs and attorneys' fees incurred in enforcing those obligations if Mister Sparky prevailed. (*Id.* §§ 3–4.)

**C.      Mister Sparky's Termination of the Franchise Agreements**

47. Franchisees failed to adopt and utilize Mister Sparky's designated point-of-sale and customer relationship management ("POS/CRM") software, ServiceTitan, as required under Section 6.7 of the Franchise Agreements, and failed to comply with certain Brand Standards.

48. Mister Sparky notified Franchisees that execution of a ServiceTitan subscription agreement was mandatory and required Franchisees to execute a contract with ServiceTitan no later than May 1, 2025. Despite repeated outreach attempts by Mister Sparky representatives through telephone calls, text messages, and emails, Franchisees failed and refused to sign a contract with ServiceTitan.

49. In addition, Franchisees ceased operating from their Approved Location and instead operated the Franchised Business from a home office, without Mister Sparky's approval, in violation of the Franchise Agreements and relevant Brand Standards.

50. On or about September 4, 2025, a Mister Sparky Franchise Business Consultant

10

conducted an in-person visit to the Approved Location—43 Avenida Arenas, Henderson, Nevada 89074—and discovered that the property was vacant and listed for sale, with no evidence of franchise operations. The consultant was unable to locate any legitimate Mister Sparky office associated with Franchisees after visits to other addresses listed online and inquiries with Daniel Ferguson and suppliers.

51.     Accordingly, on November 11, 2025, Mister Sparky issued Franchisees a Notice of Default identifying Franchisees' failure to use the required software and their failure to comply with Brand Standards by operating the Franchised Business from a home office. The Notice of Default provided Franchisees with a period of time in which to cure the identified defaults, or face termination of the Franchise Agreements. A true and correct copy of the Notice of Default is attached hereto as **Exhibit C**.

52.     Franchisees failed to cure the defaults at any time during this cure period afforded by the Notice of Default or the Franchise Agreements.

53.     Therefore, on February 13, 2026, Mister Sparky notified Franchisees in writing that they had failed to cure the defaults identified in the November 11, 2025 Notice of Default and, as a result, terminated the Franchise Agreements effective immediately upon receipt (the "Termination Notice"). A true and correct copy of the Termination Notice is attached hereto as **Exhibit D**.

54.     Pursuant to Section 16.8 of the Franchise Agreements, the Termination Notice demanded $200,000 in liquidated damages arising from the early termination of the Franchise Agreements due to Franchisees' defaults and required payment within ten days. (Ex. D at p. 1.)

55.     The Termination Notice also reminded Franchisees of their contractual duty to comply with the Franchise Agreements' post-termination obligations, including the covenant against competition and trademark restrictions. (*Id.* at p. 2.)

56.     Franchisees did not contest the defaults or object to termination following receipt of the Termination Notice.

///

///

4927-3410-3472, v. 1

**D. Defendants Are Operating a Competing Business that Violates the Franchise Agreements and Infringes Upon Mister Sparky's Marks**

57. Despite Mister Sparky's clear warnings in the Default and Termination Notices, Franchisees have begun operating a competing business under the name "Ferguson Plumbing and Electrical Group" in direct violation of their contractual obligations.

58. In fact, an investigation demonstrates a sequence of actions taken by Defendants that reflects a coordinated and gradual transition from the Mister Sparky® Franchised Business to the competing business now operating as Ferguson Plumbing and Electrical Group.

59. Defendant Ferguson Home Services LLC obtained a plumbing license in or about June 2025, while Franchisees were still operating an authorized Mister Sparky® Franchised Business.

60. During this same period, Franchisees refused to implement Mister Sparky's required POS/CRM platform, ServiceTitan, despite notice that such implementation was mandatory, thereby preventing Mister Sparky from accessing Customer Data that the Franchise Agreements provide is owned by Mister Sparky.

61. Ferguson Home Services LLC also holds the electrical license for Ferguson Plumbing and Electrical Group and improperly identifies itself as doing business as "Mister Sparky of Las Vegas." A true and correct copy of the Nevada State Contractors Board License Details is attached hereto as **Exhibit E**. A true and correct screenshot of Ferguson Plumbing and Electrical Group's License Search Results appears below.

## License Search Results

### Search Criteria
License Number: 0088292

| Principal Name | Legal Business Name | DBA Name | License Number | NV Business ID | Classification | Status | City | State |
|---|---|---|---|---|---|---|---|---|
| | FERGUSON HOME SERVICES LLC | MISTER SPARKY OF LAS VEGAS | 0088292 | NV20212013555 | C-2 Electrical | Active | HENDERSON | NV |

12

4927-3410-3472, v. 1

62. Ferguson Plumbing and Electrical Group offers the same services as the former Franchised Business, in the same territory it previously operated its Mister Sparky® franchise. Ferguson Plumbing and Electrical Group is advertised as "[f]ounded by Dan Ferguson," and its services include residential electrical services, a substantially similar business in violation of Section 14.2. A true and correct screenshot of the Ferguson Plumbing and Electrical Group's website is shown below.



63. Defendants registered the domain name fergusonplumbingandelectricalgroup.com on or about November 18, 2025, one week after Mister Sparky issued a Notice of Default but before termination of the Franchise Agreements.

64. In or around March 2026, the Facebook page previously used for "Mister Sparky Las Vegas" was renamed to "Ferguson Plumbing and Electrical Group." A true and correct

13

screenshot taken on May 6, 2026 of Ferguson Plumbing and Electrical Group's advertised offerings displayed at www.facebook.com/MisterSparkyLasVegas/ is shown below.



65.     The renamed Ferguson Plumbing and Electrical Group Facebook page also continued to display Mister Sparky's Marks and advertising. True and correct screenshots taken on May 6, 2026 of photographs displayed on Ferguson Plumbing and Electrical Group's Facebook page are shown below:

HOWARD & HOWARD ATTORNEYS PLLC



4927-3410-3472, v. 1





66. Notably, existing reviews on the page that previously referenced "Mister Sparky" continued to be displayed on the renamed Ferguson Plumbing and Electrical Group page. A true and correct screenshot taken on May 6, 2026 is provided below.



67. The images and posts from the renamed Facebook page show continued use of Mister Sparky's name and federally protected trademarks in connection with Ferguson Plumbing and Electrical Group's operations to capitalize on the goodwill associated with the Mister Sparky name and brand.

68. These Facebook posts also demonstrate that Ferguson Plumbing and Electrical Group and its principal Defendant Josh Ferguson, in concert with Franchisees, have actively solicited, diverted, and/or are doing business with former customers of the Franchised Business in violation of Section 14.2.2 of the Franchise Agreements.

69. Further demonstrating actual consumer confusion, in or about March 2026, a customer posted a review in connection with Ferguson Home Services LLC / Ferguson Plumbing and Electrical Group, which expressly identified the business as "Mister Sparky." The same online listing represents that the business has "7 years of experience," a claim that corresponds to the period during which Franchisees operated as an authorized Mister Sparky® franchise and reflects Defendants' exploitation of the goodwill generated through the franchise relationship. True and correct screenshots of the Angi page and review are shown below.



70. The review demonstrates that members of the public continue to believe Defendants' competing business is affiliated with, authorized by, or operating as a Mister Sparky® franchise, notwithstanding termination of the Franchise Agreements.

**E. Defendants Willfully Disregard Mister Sparky's Cease and Desist Notice**

71. Upon discovery of Defendants' post-termination breaches and misuse of Mister Sparky's Marks, Confidential Information, and Customer Data, on May 7, 2026, Mister Sparky sent Franchisees a Notice to Cease and Desist Violations of Post-Termination Covenants, Trademark Infringement, and Unfair Competition (the "Cease and Desist Notice"). A true and correct copy of the Cease and Desist Notice is attached hereto as **Exhibit F**.

72. The Cease and Desist Notice identified Franchisees' ongoing breaches of the post-termination covenants and misuse of Mister Sparky's Marks, Confidential Information, and Customer Data, and demanded that they immediately cease operating a competing business, cease all unauthorized use of the Mister Sparky® Marks and System, return all Customer Data, and comply with their post-termination obligations by May 15, 2026.  (Ex. F at p. 3.)

73. The Cease and Desist Notice further demanded payment of liquidated damages to compensate for Mister Sparky's lost future Royalty Fees and provided Franchisees with a deadline to confirm compliance.  (*Id*.)

74. After receiving the Cease and Desist Notice, Defendants created a new Facebook

4927-3410-3472, v. 1

HOWARD & HOWARD ATTORNEYS PLLC

page for Ferguson Plumbing and Electrical Group, and removed the images containing the Mister Sparky® Marks from their Facebook page.

75. However, Defendants have failed and refused to comply with Mister Sparky's demand to cease operating their unlawful competing business, cease all of their misuse of Mister Sparky's Marks and proprietary information, and remit the liquidated damages owed under the Franchise Agreements.

**F.      Mister Sparky Is Irreparably Harmed**

76. Franchisees' ongoing conduct, operating Ferguson Plumbing and Electrical Group, soliciting Mister Sparky's clients, using Mister Sparky's Marks and trade name in the operation of Ferguson Plumbing and Electrical Group, and role of Daniel and Joshua Ferguson in operating the unlawfully competing business, constitute a continuing breach of the Franchise Agreements' post-termination covenants against competition.

77. Franchisees' refusal to adopt ServiceTitan not only violated the Franchise Agreements technology requirements, but also prevented Mister Sparky from accessing Customer Data, which the Franchise Agreements expressly provide is owned by Mister Sparky. As a result of Franchisees' noncompliance and continued failure to return the Customer Data, Mister Sparky has been deprived of customer records, service histories, and related data necessary to communicate with and service its customers, and to protect the Mister Sparky® System.

78. Additionally, Defendants' unauthorized use of Mister Sparky's federally protected Marks constitutes trademark infringement under the Lanham Act. This infringement is further evidenced by the use of Mister Sparky's branding on Ferguson Plumbing and Electrical Group's Facebook page, in an effort to trade on the goodwill associated with the Mister Sparky® trade name and Marks.

79. Mister Sparky continues to suffer irreparable harm to its franchise system and customer goodwill as Defendants continue operating Ferguson Plumbing and Electrical Group and falsely suggest an association between Ferguson Plumbing and Electrical Group and the Mister Sparky® franchise system. A dissatisfied customer or client will incorrectly attribute that dissatisfaction to Mister Sparky and other Mister Sparky® franchisees. This is potentially

4927-3410-3472, v. 1

damaging not only to Mister Sparky, but also to all its franchisees who rely on the reputation of the Mister Sparky® Marks in the operation of their businesses. Immediate and permanent injunctive relief is necessary to prevent Defendants from continuing to trade off Mister Sparky's name, reputation, and trademarks.

80. Allowing Defendants to continue operating a competing business confuses the public as to its affiliation with the Mister Sparky® System and places the brand's reputation, goodwill, and integrity of the franchise system in jeopardy. Defendants' unlawful competition interferes with Mister Sparky's ability to develop and transition the territory to a replacement franchisee and unfairly diverts customers who associate Defendants' business with the Mister Sparky® brand. This conduct causes ongoing and irreparable harm to Mister Sparky for which there is no adequate remedy at law, and the only meaningful relief is an injunction enjoining Defendants from unlawfully and wrongfully operating their competing business.

## CAUSES OF ACTION

### Count I: Breach of Contract—Post-Termination Covenants

### (Against Franchisee Defendants)

81. The allegations of the foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

82. The Franchise Agreements are lawful and binding contracts between Mister Sparky and Franchisees.

83. Mister Sparky fully performed its obligations under the Franchise Agreements.

84. Franchisees have failed to comply with the post-termination obligations set forth in the Franchise Agreements, including by operating a competing business in active concert with Defendant Ferguson Home Services LLC and Joshua Ferguson, by using Mister Sparky's goodwill and Marks to attract customers, and by retaining and using Mister Sparky's Customer Data following termination. This conduct constitutes material breaches of the Franchise Agreements.

85. The Franchise Agreements expressly provide that Mister Sparky owns all Customer Data and that, upon termination, Franchisees are required to promptly deliver all

Customer Data without retaining copies in any form. Defendants' continued possession and use of Mister Sparky's Customer Data constitutes a continuing, material breach of the Franchise Agreements.

86. Mister Sparky has no adequate remedy at law to protect its legitimate business and proprietary rights at issue in this lawsuit. The damages from Franchisees' failure to comply with the post-termination obligations of the Franchise Agreements are considerable and continuing and thus not capable of ascertainment at this time.

87. Mister Sparky is therefore entitled to specific performance of the Franchise Agreements' requirement that Defendants immediately return all Customer Data to Mister Sparky, permanently delete all copies in their possession, custody, or control, and certify in writing their compliance.

88. Mister Sparky is further entitled to preliminary and permanent injunctive relief enforcing all post-termination obligations of the Franchise Agreements, preventing Defendants from operating a competing business in violation of the non-compete provisions, preventing Defendants from using Mister Sparky's Marks, and further misusing Mister Sparky's Customer Data.

89. As a direct and proximate result of Defendants' actions, Mister Sparky has suffered and continues to suffer irreparable injury.

**Count II: Trademark Infringement**

**(Against All Defendants)**

90. The allegations of the foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

91. Mister Sparky owns valid and enforceable rights in the Mister Sparky Marks, trade name, logo, and related branding, which are federally registered and widely recognized in the residential electrical services industry.

92. Since registering its Marks, Mister Sparky has extensively advertised the Marks in connection with its products and services.

93. Under the Franchise Agreements, Franchisees were granted a limited, non-

transferable license to use the Marks solely in connection with the operation of their authorized Mister Sparky franchises. That license terminated upon the termination of the Franchise Agreements.

94. Defendants have no right to use Mister Sparky's Marks.

95. Despite these clear contractual and legal restrictions, Defendants continued to use Mister Sparky's Marks and brand identity in connection with the operation of Ferguson Plumbing and Electrical Group.

96. Defendants' unauthorized use of the Marks is likely to cause confusion, mistake, or deception among consumers as to the affiliation, connection, or association between Mister Sparky and Ferguson Plumbing and Electrical Group, and constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114 and 1125(a).

97. Defendants' conduct was done knowingly, willfully, and intentionally, undertaken with full knowledge of Mister Sparky's rights and with the purpose of trading on Mister Sparky's reputation and goodwill to cause confusion, or to cause mistake, or to deceive.

98. As a direct and proximate result of Defendants' infringement, Mister Sparky has suffered and continues to suffer irreparable harm, including loss of control over its brand, dilution of its Marks, and damage to its reputation, and has incurred and continues to incur monetary damages in an amount to be determined at trial, plus attorneys' fees, costs and interest.

**Count III: Civil Conspiracy**

**(Against All Defendants)**

99. The allegations of the foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

100. As guarantors and operators of the Franchised Business, Defendants were aware of the existence and terms of the Franchise Agreements, including the post-termination non-compete and other post-termination obligations.

101. Defendants knowingly conspired, combined, agreed, and acted in concert to develop a plan and scheme to evade the non-compete and other post-termination requirements in the Mister Sparky Franchise Agreements.

102. The purpose and objective of Defendants' conduct was to make customers cease doing business with the Franchised Business and transfer those customers to Ferguson Plumbing and Electrical Group, while at the same time avoiding the post-termination obligations under the Franchise Agreements.

103. Defendants created, planned, and implemented their conspiracy in secret to deprive Mister Sparky of financial benefits, deprive Mister Sparky of the benefits of the Franchise Agreements, and deprive Mister Sparky of the opportunity to retain the goodwill developed under Mister Sparky's name, Marks, System, and reputation.

104. In furtherance of the conspiracy, Defendants coordinated and set forth a plan to begin operating a competing business that offers the same services as the Franchised Business under a new name, to divert Mister Sparky's customers and goodwill to the competing business, and to infringe upon Mister Sparky's Marks.

105. As a direct and proximate result of Defendants' conspiracy, Mister Sparky has suffered and continues to suffer irreparable harm to its business, brand, and customer relationships, and has incurred and continues to incur monetary damages, in an amount to be determined at trial, plus attorneys' fees, costs, and interest.

### Count IV: Conversion

### (Against All Defendants)

106. The allegations of the foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

107. Mister Sparky owns all right, title, and interest in the Customer Data generated through operation of Franchisees' Franchised Business, including customer names, contact information, service and purchase histories, and related records.

108. Mister Sparky's interest in this property is capable of precise definition, capable of exclusive possession and control, and subject to Mister Sparky's legitimate claim of exclusivity, as expressly provided in the Franchise Agreements.

109. Following termination of the Franchise Agreements, Franchisees were required to immediately return all Customer Data and permanently delete any copies in their possession,

HOWARD & HOWARD ATTORNEYS PLLC

custody, or control, in whatever form existing.

110. Mister Sparky demanded the return of its Customer Data.

111. Defendants knowingly and intentionally exercised wrongful dominion and control over Mister Sparky's personal property by retaining, withholding, accessing, and using Mister Sparky's Customer Data after termination, without authorization.

112. Defendants' conduct constitutes a distinct act of dominion wrongfully exerted over Mister Sparky's personal property, in denial of, and inconsistent with, Mister Sparky's ownership rights, and in exclusion and defiance of those rights.

113. As a direct and proximate result of Defendants' conversion, Mister Sparky has suffered damages, including loss of control over its customer relationships, lost business opportunities, and harm to the integrity of its franchise system in an amount to be proven at trial, plus attorneys' fees, costs, and interest.

**Count V: Replevin (NRS 17.120)**

**(Against All Defendants)**

114. The allegations of the foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

115. Mister Sparky is the lawful owner of, and entitled to immediate possession of, its Customer Data, including all copies and versions thereof, in whatever form existing and wherever stored.

116. Defendants are in wrongful possession and control of Mister Sparky's property and continue to withhold such property despite Mister Sparky's contractual rights and demand for return, depriving Mister Sparky of its use and possession.

117. Defendants' continued possession of the property is unlawful and without any legal justification or consent.

118. The value of Mister Sparky's Customer Data is an amount to be determined at trial.

119. Mister Sparky, as a direct result of Defendants' refusal to return the Customer Data, has suffered and is continuing to suffer damages in an amount to be determined at trial.

120. Mister Sparky seeks a judgment ordering Defendants to immediately return all

25

HOWARD & HOWARD ATTORNEYS PLLC

Customer Data, in whatever form existing and wherever stored, and to permanently delete all copies in their possession, custody, or control, plus all relief available under NRS 17.120, including costs and such other relief as the Court deems just and proper.

**Count VI: Claim and Delivery (NRS 31.840)**

**(Against All Defendants)**

121. The allegations of the foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

122. Mister Sparky is the lawful owner of, and entitled to immediate possession of, its Customer Data, including all copies and versions thereof, in whatever form existing and wherever stored.

123. Mister Sparky's Customer Data includes customer names, addresses, telephone numbers, and email addresses, service histories, invoices, and related payment records.

124. Defendants are wrongful detaining Mister Sparky's property and continue to withhold such property despite Mister Sparky's contractual rights and demand for return, depriving Mister Sparky of its use and possession.

125. Upon information and belief, Defendants continue to detain Mister Sparky's property because they are using the Customer Data for Defendants' competing business.

126. Defendants' detention of the property is intentional, unauthorized, and in knowing violation of Mister Sparky's ownership rights.

127. Mister Sparky's property has not been taken for any tax, assessment, or fine pursuant to statute, nor has it been seized under any execution or attachment against Mister Sparky's property.

128. Mister Sparky is entitled to immediate possession of the property pending final judgment.

129. Mister Sparky seeks an order pursuant to NRS 31.840 directing the immediate claim and delivery of all Customer Data to Plaintiff, requiring Defendants to permanently delete all copies in their possession, custody, or control, and to certify compliance under oath, plus all relief available, including costs and such other relief as the Court deems just and proper.

26

## Count VII: Breach of Contract—Failure to Pay Liquidated Damages

### (against Defendant Daniel E. Ferguson)

130. The allegations of the foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

131. The 2020 Franchise Agreement is a lawful and binding contract between Mister Sparky and Defendant Daniel E. Ferguson.

132. Upon termination of the 2020 Franchise Agreement for cause, Defendant Daniel Ferguson was contractually obligated to pay liquidated damages.

133. Mister Sparky fully performed its obligations under the 2020 Franchise Agreement.

134. Defendant Daniel Ferguson breached the 2020 Franchise Agreement by failing to pay liquidated damages due and owing following termination.

135. As a direct and proximate result of Defendant Daniel Ferguson's actions, Mister Sparky has been damaged in an amount to be determined at trial, but in no event less than $100,000, plus costs, interest, and attorneys' fees.

## Count VIII: Breach of Contract—Failure to Pay Liquidated Damages

### (against Defendants T and N Construction LLC and Daniel E. Ferguson)

136. The allegations of the foregoing paragraphs are hereby incorporated by reference as if fully set forth herein.

137. The 2022 Franchise Agreement is a lawful and binding contract between Mister Sparky and Defendant T and N Construction LLC. Defendant Daniel E. Ferguson is personally bound by its obligations pursuant to his written personal guarantee.

138. Upon termination of the 2022 Franchise Agreement for cause, Defendants T and N Construction LLC and Ferguson were contractually obligated to pay liquidated damages.

139. Mister Sparky fully performed its obligations under the 2022 Franchise Agreement.

140. Defendants T and N Construction LLC and Ferguson breached the 2022 Franchise Agreement by failing to pay liquidated damages due and owing following termination.

4927-3410-3472, v. 1

141. As a direct and proximate result of Defendants' actions, Mister Sparky has been damaged in an amount to be determined at trial, but in no event less than $100,000, plus costs, interest, and attorneys' fees.

**WHEREFORE**, Mister Sparky prays for judgment, jointly and severally, against Defendants as follows:

A. For an order ratifying and enforcing the termination of the Franchise Agreements as of the effective date of the Termination Notice;

B. For an order for a preliminary and permanent injunction enjoining Defendants and all those acting in concert with them, from engaging in unfair competition with Mister Sparky;

C. For an order for a preliminary and permanent injunction directing that:

(1) Defendants and their officers, directors, shareholders, members and/or partners, beneficial owners, investors, employees, consultants, representatives, attorneys and agents, and all others in active concert or participation with them to comply with all post-termination obligations of the Franchise Agreements, including, but not limited to, the non-compete and non-solicitation provisions in Section 14;

(2) Defendants and their officers, directors, shareholders, members and/or partners, beneficial owners, investors, employees, consultants, representatives, attorneys and agents, and all others in active concert or participation with them, immediately cease using or employing any of Mister Sparky's Marks, or any other name, designation, or mark which is deceptively or confusingly similar to, or likely to cause confusion with, any of Mister Sparky's Marks in connection with the operation, promotion, or advertising of any business; and

(3) Defendants and their officers, directors, shareholders, members and/or partners, beneficial owners, investors, employees, consultants, representatives, attorneys and agents, and all others in active concert or participation with them, immediately return to Mister Sparky all Customer Data, in whatever form and wherever stored, permanently delete all copies of such Customer Data in their

4927-3410-3472, v. 1

HOWARD & HOWARD ATTORNEYS PLLC

possession, custody, or control, cease all use of such Customer Data, and provide written certification under oath confirming compliance with these obligations;

D.    For an order, pursuant to NRS 17.120 and NRS 31.850, requiring Defendants to immediately surrender and deliver to Mister Sparky all Customer Data, including all copies and versions thereof, in whatever form existing and wherever stored; cease all access to use of, or control over Mister Sparky's Customer Data; to permanently delete and destroy all copies of Mister Sparky's Customer Data remaining in Defendants' possession, custody, or control; and to provide written certification, under oath, setting forth in detail the manner and form in which Defendants have complied with the Court's order;

E.    For an order, pursuant to 15 U.S.C. § 1116, requiring Defendants to file with the Court and serve on Mister Sparky, within fifteen (15) days after service on it of an Order of injunction, a written report, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

F.    For an award against Defendants, jointly and severally, for the damages Mister Sparky has sustained and the profits Defendants have derived as a result of their trademark infringement, assessing such damages in a separate accounting procedure, and then trebling those damages in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117;

G.    For an award against Defendants, jointly and severally, for all actual, consequential, and exemplary damages, in an amount to be proven at trial, but in excess of $75,000;

H.    For an award against Defendants, jointly and severally, for the damages Mister Sparky has sustained and the profits Defendants have derived as a result of their operation of a competing business in violation of the non-compete and non-solicitation provisions in the Franchise Agreements;

I.    For an award against Franchisees, jointly and severally, for Mister Sparky's reasonable costs and expenses, including attorneys' fees, incurred in enforcing the provisions of the Franchise Agreements pursuant to Section 23.10 of the Franchise Agreements and Section 4

4927-3410-3472, v. 1

of Appendix C to the 2022 Franchise Agreement;

    J.    For an award against Defendants, jointly and severally, for Mister Sparky's costs, disbursements, and attorneys' fees incurred in this action, as allowed by the Lanham Act, 15 U.S.C. § 1117(a);

    K.    For an award against Defendants, jointly and severally, for prejudgment interest; and

    L.    For such other and further relief as the Court deems just and equitable.

Dated: this 29th day of May, 2026

HOWARD & HOWARD ATTORNEYS PLLC

By: /s/ Jonathan W. Fountain
Jonathan W. Fountain, Esq.
Nevada Bar No. 10351
Caleb L. Green, Esq.
Nevada Bar No. 15234
HOWARD & HOWARD ATTORNEYS PLLC
3800 Howard Hughes Pkwy., Suite 1000
Las Vegas, NV 89169
Tel. (702) 257-1483
Email: jwf@h2law.com
Email: clg@h2law.com

Michael L. Sturm, Esq.
Will comply with LR IA 11-2 within 14 days
Maisa Jean Frank, Esq.
Will comply with LR IA 11-2 within 14 days
LATHROP GPM LLP
The Watergate – Suite 700
600 New Hampshire Avenue NW
Washington, DC  20037
Telephone: (202) 295-2200
Email: michael.sturm@lathropgpm.com
Email: maisa.frank@lathropgpm.com

*Attorneys for Plaintiff*
*Mister Sparky Franchising SPE LLC*

4927-3410-3472, v. 1